**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**November 22, 2017**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re*: **R.C., T.C., E.C., and X.C.**

**No. 17-0511** (Wayne County 15-JA-079, 15-JA-080, 15-JA-081, & 15-JA-082)

## MEMORANDUM DECISION

Petitioner Father L.C., by counsel Raymond A. Nolan, appeals the Circuit Court of Wayne County's May 4, 2017, order terminating his parental rights to R.C., T.C., E.C., and X.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian") for child R.C., Elizabeth Gardner Estep, filed a response on behalf of the child in support of the circuit court's order. The guardian for children T.C., E.C., and X.C., David R. Tyson, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in ratifying emergency custody of the children at the preliminary hearing and in terminating his parental rights upon insufficient evidence and without imposing a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2015, the DHHR filed an abuse and neglect petition that alleged the parents had a significant history of Child Protective Services ("CPS") referrals dating back to 2002 that included allegations of poor hygiene, lice, and bed bugs. The petition also alleged a history of referrals regarding R.C., including allegations that he drew inappropriate sexual and violent pictures, threatened to rape a child in his class, and obtained ingredients for making a bomb. As early as 2014, the DHHR received referrals regarding possible sexual abuse in the home, although those allegations were not then substantiated.

According to the petition, the most recent referral came in September of 2015 and alleged that R.C. sexually abused his siblings E.C., who is autistic, and T.C. According to E.C., R.C.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

would come into her room at night and touch her "private area[.]" E.C. further alleged that R.C. also touched T.C. The referral also alleged continued poor hygiene, including lice and a strong odor on E.C. According to the petition, the DHHR received a second referral in September of 2015 that R.C. was discovered with a notebook with instructions to make a bomb and "a hit list . . . ." The referral additionally alleged that R.C. raped his mother, grandmother, and sibling X.C, in addition to the allegations of sexual abuse against his other siblings set forth above.

According to the petition, the parents took E.C. to the hospital because of the sexual abuse and were aware of R.C.'s actions. The petition also alleged that the family recently moved to Kentucky for a short time before moving back to West Virginia. According to the petition, the parents resided with one of the children's grandfathers, who kicked T.C. in the stomach, causing him to vomit, and threatened to kill the child. The petition also alleged that E.C. and X.C. underwent forensic interviews that yielded "normal" results. Despite these results, the interviewer had "lots of concerns" about possible coaching of E.C., who may have been told she would be spanked if she told the interviewer about "other things" or anything other than "no[.]" Further, the petition alleged that E.C.'s school reported a discharge from her genitals that had a strong odor. The child's underwear was also extremely dirty, as were her feet. E.C. told school personnel not to say anything because it was a secret. She also mentioned R.C. coming into her room to play a game and pointed to her genitals. The petition contained further allegations of the investigation into sexual abuse in the home, including additional statements from E.C. regarding R.C.'s behavior, in addition to the allegation that the children suffered from repeated lice infestations. After receiving these referrals, the DHHR implemented a series of protection plans that included R.C.'s placement in a relative's home to ensure the safety of his siblings. Finally, because E.C. indicated that the family intended to move to Kentucky on October 1, 2016, the DHHR took immediate emergency custody of the children in order to ensure their safety against the issues of abuse in the home.

On October 9, 2015, the circuit court held a preliminary hearing and found probable cause to support the children's removal. The circuit court based this finding on the children's chronic health and hygiene issues, history of CPS involvement, and the allegations of sexual abuse by R.C. Additionally, the circuit court appointed separate guardians for R.C. and the other children. The circuit court granted the parents supervised visitation with the children.

In November of 2015, the circuit court held an adjudicatory hearing, during which the parents stipulated to chronic unclean housing and living conditions; lack of supervision; failure to protect the children; and medical neglect of the children. As such, the circuit court found that the parents neglected the children. Thereafter, the circuit court granted the parents post-adjudicatory improvement periods.

At a review hearing in March of 2016, the circuit court found that the parents had been "moderately compliant" with the terms of their improvement period. The following month, petitioner submitted to a psychological evaluation. According to the evaluator, petitioner had "little awareness of [R.C.'s] needs even though it has been explained to him that he needs treatment and services." Moreover, the evaluator noted continued concerns over the conditions of the home, due to the fact that petitioner "brought a bag of pajamas for [E.C.] that had dead roaches and rat feces in the bag." Petitioner also informed the evaluator that he did not believe he

had any parenting weaknesses. Thereafter, the DHHR filed an amended petition based on new allegations from E.C. and T.C., who both disclosed significant sexual abuse by petitioner and an uncle, in addition to R.C. The amended petition also alleged that the mother had knowledge of this abuse.[2]

In October of 2016, the circuit court held an adjudicatory hearing on the new petition and found that the children were abused and neglected based on the sexual abuse in the home. Thereafter, the matter was continued several times before the final dispositional hearing. In April of 2017, the circuit court held a dispositional hearing, during which it found that the parents failed to acknowledge the sexual abuse in the home or otherwise remedy the issues of chronic medical neglect and unsanitary conditions in the home. As such, the circuit court terminated petitioner's parental rights to the children.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

On appeal, petitioner first alleges that the circuit court erred in ratifying the DHHR's emergency custody of the children at the initial preliminary hearing. According to petitioner, the

---

[2]According to the circuit court's later order, following E.C.'s additional disclosures to law enforcement, "the father and mother [were] indicted on forty-four . . . counts of [i]ncest and [s]exual [a]buse by a [p]arent[.]"

[3]The parents' parental rights to the children were terminated below. Children T.C., E.C., and X.C. are currently placed together in a foster home with a permanency plan of adoption therein. According to the guardian for R.C., that child was adjudicated as a juvenile delinquent for the charge of incest in a separate juvenile delinquency proceeding. As a result, he was placed in the temporary legal care, custody, and control of the DHHR while enrolled in a treatment program to address his behavioral issues.

3

only reason the DHHR took emergency custody of the children was because the family intended to move to Kentucky the day after the expiration of the protection plan put in place prior to the petition's filing. Petitioner argues that, absent the alleged move, there was simply no evidence to establish imminent danger to the children. We do not agree.

According to West Virginia Code § 49-4-303,

a child protective service worker may take the child or children into his or her custody (also known as removing the child) without a court order when:

(1) In the presence of a child protective service worker a child or children are in an emergency situation which constitutes an imminent danger to the physical well-being of the child or children, as that phrase is defined in section two hundred one, article one of this chapter; and

(2) The worker has probable cause to believe that the child or children will suffer additional child abuse or neglect or will be removed from the county before a petition can be filed and temporary custody can be ordered.

That statute goes on to require that

[a]fter taking custody of the child or children prior to the filing of a petition, the worker shall forthwith appear before a circuit judge or referee of the county where custody was taken and immediately apply for an order . . . . This order shall ratify the emergency custody of the child . . . .

*Id.*

Contrary to petitioner's argument that the circuit court lacked probable cause to support the emergency removal, the record is clear that the circuit court based its ratification upon substantial evidence, including testimony from a DHHR employee that detailed E.C.'s repeated disclosures to multiple individuals that R.C. sexually abused her. According to the DHHR employee, she personally spoke with personnel at E.C.'s school who confirmed the child's disclosures and also confirmed that the child had chronic issues with hygiene, including lice and bed bugs. According to school personnel, the parents failed to correct the hygiene issues, despite having repeatedly been notified. Based upon the evidence, the circuit court found that it had "reasonable cause to believe the children [were] neglected due to chronic health and cleanliness issues, history of CPS involvement, and allegations of sexual abuse by the oldest sibling, [R.C.]" We agree.

According to West Virginia Code § 49-1-201,

"[i]mminent danger to the physical well-being of the child" means an emergency situation in which the welfare or the life of the child is threatened. These conditions may include an emergency situation when there is reasonable cause to

4

believe that any child in the home is or has been sexually abused or sexually exploited . . . .

Here, the evidence overwhelmingly supported a finding of probable cause that the children's welfare was threatened. As set forth above, the circuit court heard evidence about E.C.'s multiple disclosures of sexual abuse in the home at the hands of her sibling, R.C. While petitioner argues on appeal that the DHHR's petition "was filed only because of the information the parents may relocate to Kentucky[,]" he fails to acknowledge that the expiration of the protection plan that kept child R.C. out of the home would potentially expose his siblings to further abuse if R.C. was permitted to move back into the family home, regardless of the state in which the family lived. As such, it is clear that the circuit court did not err in ratifying the DHHR's emergency custody of the children following the preliminary hearing because the evidence established that the children were in imminent danger.

Next, petitioner argues that the circuit court erred in terminating his parental rights upon insufficient evidence.[4] According to petitioner, he substantially complied with the terms and conditions of his improvement period below. He further argues that, because he established the requisite improvement in his overall attitude and approach to parenting, termination of his parental rights was erroneous, given that the circuit court could have imposed a less-restrictive dispositional alternative. Upon our review, we find no error in the circuit court's termination of petitioner's parental rights. Contrary to petitioner's argument on appeal, the circuit court specifically found that

> [t]he family has had a long history of CPS investigations based upon chronic neglect of cleanliness and hygiene of the children, including lice infestations, bed bugs, smelly clothing (both urine and feces), chronic medical neglect (T.C. – heart condition untreated and bed wetting and soiling his pants; and E.C. – urinary tract infections), and unstable housing[.]

Based on the evidence at disposition, the circuit court found that "these issues continue to be unresolved by the parents[.]"

The circuit court found that petitioner's psychological evaluation contained a guarded prognosis for improvement based on his "continued denial of any issues of abuse or neglect" in the home. Beyond the refusal to acknowledge the issues in the home, the circuit court found that the parents were both "defiant with social workers, school personnel and service providers" and

---

[4]Petitioner also alleges that termination was inappropriate because "the DHHR failed to satisfy its burden of proof relative to the allegations contained in the [a]mended [p]etition . . . ." In support of this argument, petitioner focuses solely upon the adjudicatory findings regarding sexual abuse in the home. However, petitioner ignores the fact that he stipulated to the allegations in the original petition, including his neglect of the children due to chronic unclean housing and living conditions; lack of supervision; failure to protect; and medical neglect. Therefore, it is unnecessary to determine whether the circuit court's adjudication of sexual abuse following the filing of the amended petition was appropriate, given that petitioner was appropriately adjudicated based on his own admissions.

also "challenge[d] the motives of social workers, school personnel, family members, and foster parents[.]" Ultimately, the circuit court found that petitioner's "continued denial and failure to acknowledge any issues of abuse and neglect is a clear indication that there is no reasonable likelihood that [petitioner] can substantially correct the circumstances any time in the near future[.]"

According to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) goes on to establish that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child[.]

As set forth above, substantial evidence established that petitioner not only failed to follow through with the reasonable family case plan, but plainly refused to acknowledge the conditions of abuse and neglect in the home. We have held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Based on petitioner's refusal to acknowledge the conditions in the home, we find no error in the circuit court's finding in this regard. The circuit court made findings addressing how termination of petitioner's parental rights served the children's best interests, especially in light of the failure to remedy the chronic conditions of neglect in the home. As such, we find that the circuit court had sufficient evidence upon which to find that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of his parental rights was necessary for the children's welfare.

We have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604]. . . may be employed without the

use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Because the record establishes that the circuit court had ample evidence upon which to base its findings, we find no error in the termination of petitioners' parental rights to the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 4, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: November 22, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker